No. 2312.—C. M. Shepherd et als. *v.* Ellen Brooks et als.

A *fidei commissum* is prohibited, even in favor of parties capable of receiving. The interposition of parties in a testament without interest is a *fidei commissum* within the prohibition, and such interposition, being made in fraud of the law, may be proved *dehors* the will. But the proof must show not only the intention of the testator to create a trust, but it must show, also, that the interposed person was aware of, or that he has discovered such intention, and that he has executed, or intends to execute, the trust, notwithstanding his discovery of the intention of the testator.

APPEAL from Second District Court, parish of Orleans. *Thomas*, J. *C. M. Conrad & Son*, for plaintiffs and appellants. *C. Roselius & Alfred Philips* and *Randall Hunt*, for defendants and appellees.

Howell, J. This is an action by other collateral relations of James H. Shepherd, deceased, against the heirs of Rezin D. Shepherd, deceased, and differs from the one just decided in demanding that the will of J. H. Shepherd be declared null, in whole—first, because it contains a substitution in favor of Abraham Shepherd, who was to take under it in case Rezin did not; or, secondly, because, taken in connection with a letter addressed to Rezin, of concurrent date, written, dated and signed by James, and fraudulently suppressed by Rezin, the two constituting the real will, it creates a substitution or a *fidei commissum* in favor of certain of the testator's nephews and nieces; or null so far as it attempts to deprive the testator's mother of her *legitime* and disinherit her without cause.

The same defense was set up in both cases. Both were tried, argued and decided together, on the same evidence, in the court below, and so argued and submitted in this court.

*First*—As to the first ground of nullity, we think article 1508, C. C., applies. It declares that " the disposition by which a third person is called to take the gift, the inheritance or the legacy, in case the donee, the heir or the legatee does not take, shall not be considered a substitution, and shall be valid."

17

*Second*—We have already concluded, in the former case, that the "sealed letter" was not concealed, suppressed or destroyed by Rezin D. Shepherd, and is not satisfactorily shown to have been written, dated and signed by the testator, and, if it were so shown, it is not a part of his will; and consequently it does not, as such, annul the probated will for containing a substitution or *fidei commissum* in favor of the nephews and nieces, as charged in the petition in this suit

But plaintiffs' counsel, in their argument, abandon the charge of a substitution, and contend that if the will of James H. Shepherd consists solely of the probated paper, the disposition in favor of Rezin D. Shepherd should be set aside as illegal, because the proof is, that it. was in trust for the nephews and nieces, which proof may be made by extrinsic evidence of every description.

In their last brief, they say: "Most of the argument, oral and written, of the counsel for defendants, has been devoted to showing that the bequest (taken in connection, of course, with the disposition in favor of the nephews and nieces) does not involve a substitution. In this we agree with them.    *    *    *    But as the evidence developed itself, and it became apparent that R. D. Shepherd, according to his own statements, was only nominally heir, with certain limited rights and privilges, but stopping far short of ownership; and that the real beneficiaries were the nephews and nieces of the testator, all doubt as to which of these two tenures, both equally illegal, the disposition belonged, was at an end. Accordingly, the word 'substitution' does not once occur in our original brief."

We may concede that the authorities cited by them establish the proposition that *fidei commissa*, even in favor of parties capable of receiving, are prohibited; that the interposition of parties without interest is a *fidei commissum* within the prohibition, and that such interposition, being in fraud of the law, may be proven *dehors* the will.. But the proof must show not only the intention on the part of the testator to create a trust, but also that the interposed person, trustee, instituted heir or legatee was aware of, or discovered, such intention, and has either executed or intends to execute it. Goin Delisle, pp. 58, 59, sections 55. 56; 12 La. 19; 3 R. 441; 2 An. 718; 6 An. 133; 15 An. 157, 600.

M. Coin Delisle, cited above, after stating the question to be an important one, whether in the case of a regular will a secret or verbal trust or prohibited substitution can be proved, and saying that M. Rolland de Villargues and M. Dalloz maintained the negative and M. Merlin the affirmative, and adopting Merlin's views as the more sound, adds:

"Mais, outre que la preuve, en pareille matière, doit être admise avec précaution, il faut aussi qu'il résulte bien formellement des faits

.que le légataire ait consenti à être l'intermédiaire du testateur pour l'exécution d'une substitution prohibée. S'il n'avait été chargé que d'une fiducie ou d'un fidéicommis indépendant de son décès, la preuve ne pourrait être admise. (M. Merlin, lieu cité, Observ. sur l'arrêt du 22 décembre 1814; V. aussi ci-dessus No. 22.) On ne pourrait même être admis à prouver que le donateur avait, en faisant sa libéralité, l'opinion que le légataire la rendrait au tiers, parce que 'l'opinion que peut avoir un donateur de l'emploi probable des objets donnés ne peut jamais être considérée comme une condition, même tacite, apposée à la donation, ni constituer un fidéicommis.' (Caen, 31 janvier 1827.)"

We may here remark that in Duplessis v. Kennedy, 6 La. 247, and Beaulieu v. Ternoir, 5 An. 480, it was said: "The entire disposition is null in case of substitution only."

Now, the opinion we have formed from the facts and proofs of this case, does not bring it within the doctrine advanced by plaintiffs. We do not consider it proven that Rezin D. Shepherd was constituted, or believed himself, a trustee to transmit the estate of his brother James to his nephews and nieces. He always claimed to be the actual legatee of all the property, in full, indefeasible right of ownership, and from the first of his possession asserted all the rights of sole, undisputed owner, paying and liquidating debts, executing and canceling mortgages, offering for sale and selling the property, and generally and publicly doing all acts pertaining to ownership, frequently mentioning these things and his intentions concerning them in his correspondence with the members of the family; but admitting that his brother had requested him, in a confidential letter, to do certain things and make certain gifts and dispositions as of his own property, stating at the same time, in which he is sustained by the record, that his brother's estate was greatly involved, and but for the munificent aid of Judah Touro and his own means and credit, the property would not have paid the debts. In support and direct recognition of his ownership, Moses, his brother, and the father of four of the claimants in these suits, jointly with three other parties, in July, 1842, bought from him the Golden Grove plantation and the slaves inherited by him from James, for $250,000, taking his title. It is true he, at times, used words such as "legacy," "bequest," etc., which ordinarily imply testamentary disposition, and wrote about carrying out the wishes of his brother James, as contained in the sealed letter; but, as said by us in the case of Lucas v. Brooks, just decided, all that he has said, written and done in relation to this subject, must be taken and construed together, and, when so taken, there is little difficulty in determining what he meant, and it is evident the family understood it as he did, which accounts for their course of conduct up to the day of his death. After this event. Lee says he advised his children to take no steps until

they had time to see whether or not Rezin's representatives had instructions to do what he understood Rezin was to have done in his will. It is true, also, that Abraham Shepherd seems to have construed the probated will and the sealed letter as constituting a trust in favor of his own and Henry's children, when he wrote to Lee, in 1838, but it was only his *opinion*, which must be taken simply as an opinion.

Our conclusion is, that Rezin was the real legatee of his brother James under the will probated in 1837, and we think it unnecessary to go into an examination of the interesting and prolific subject of prohibited substitutions and *fidei commissa*, the distinctions between them, the effect of either upon the whole or a part of a will, and the many authorities upon each side of these questions.

The position that the will is null in so far as it attempts to deprive the mother of her *legitime* and disinherit her without cause, is not sustained in law. Article 1489, C. C., says: "Any disposition of property, whether *inter vivos* or *mortis causa*, exceeding the *quantum* of which a person may legally dispose, to the prejudice of the forced heirs, is not null, but only reducible to that *quantum*." Plaintiffs' counsel admit that this is not an action of reduction, to which the plea of prescription would apply.

The judge *a quo* did not err in his conclusion.

Judgment affirmed.

Rehearing refused.